IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                PLAINTIFF

VS.                                    NO.  4:05 CR 137 JMM

JULIAN ALLMON
STEVEN BURSE                                                             DEFENDANTS

**ORDER**

Pending before the Court are the Defendant Allmon's Motion to Suppress Evidence, which Defendant Burse joins, and Defendant Allmon's Second Motion to Suppress Evidence and Supplemental Motion to Suppress.  In the Motion to Suppress, Defendants seek to suppress evidence of the detention, arrest, pat down, and search of the apartment on April 5, 2005, which resulted in a two-count indictment for conspiracy to possess with intent to distribute crack cocaine and with possession of a firearm during and in relation to a drug trafficking crime. Defendants argue such was conducted without a warrant in violation of the Fourth Amendment.

The Second Motion to Suppress Evidence involves a tape-recording and transcript of a telephone conversation between Derek Allmon and Defendant Allmon.  This telephone call was between Defendant Allmon and his uncle, Derek Allmon, who was incarcerated at the time in Tennessee, and occurred on April 7, 2005.  The Defendant alleges that the government has the burden of proving that the seizure of the recording was authorized under an exception to the warrant requirement of the Fourth Amendment.  He argues in the Supplemental Motion to Suppress that the taped conversation should be excluded under the Fourth Amendment and under the Federal Wiretap Act, 18 U.S.C. §2511 and 2515.

The Court hereby denies the Defendants' Motion to Suppress Evidence regarding the

1

April 5, 2005 arrest, and grants the Second Motion to Suppress Evidence, and the Supplement thereto involving the tape-recording and transcript.

**STATEMENT OF FACT**

<u>April 5, 2005 Arrest</u>

A hearing on the motions to suppress was held before this Court January 3, 2006, wherein three police officers who were involved in the arrest of April 5, 2005, testified. In that testimony, it was revealed that police officers were called to the scene of a two-story apartment building by the landlord who complained of vagrants and possible narcotics use. After two officers arrived, and while waiting for the landlord, they walked around the building in single file. The officer in front found a purse on the ground, and when he reached to pick it up, objects began falling onto the air conditioning units for the building. These units were about six feet in front of the officer. The officer looked up and saw a man in a second-story window throwing objects out, and he later identified that man as Julian Allmon.

The officers returned to the front of the building and met the landlord. These three then began talking to two men who were leaving the building, Defendants Burse and Mitchell. At that point, the first police officer went back around the building to retrieve what had been thrown from the window. He recovered a sandwich bag, white rocklike substance and a 40 caliber Glock pistol. He went back to the front of the building and helped to place Burse and Mitchell in custody. When he got back to the apartment building, he and the other officers (back-up officers had arrived by that time) were admitted into the building by the landlord who used his key. He found at least one officer speaking with Julian Allmon in the common area of the apartment

building and advised that officer to arrest Allmon because Allmon had been the man leaning from the window throwing out objects.

Allmon was then taken into custody and patted down. Police recovered keys and money. Allmon was taken to the police car.[1] The officers and the landlord then returned to the building and were heading up to apartment #7, where Allmon had been leaning from the window. A woman came out of apartment #7 and closed the door. She said she did not live there and did not have a key. She was searched and officers found a glass tube pipe in her jacket pocket. The landlord's key did not work, as the locks had been changed. The woman in custody stated that Julian Allmon lived there and had a key. Another officer retrieved the keys taken from Allmon and the officers gained entry into the apartment, with the landlord's consent. The officers claimed to have concerns about entering the apartment because one gun had already been found, and they were not sure if anyone else was in the apartment. Further, because the sandwich bag had been thrown out of the apartment window, they had cause to believe that other evidence may be subject to being destroyed. When the officers entered the apartment, a sweep was done to ensure that no other persons were inside. They found a gun lying on top of the mattress in the bedroom, a pair of scales in the living room, and a plate in the bathroom with white residue on it. The officers did not touch anything, and after the apartment was secured, narcotics detectives were called in to do the search.

---

[1] Testimony from the officers differed regarding when Allmon was first searched. One stated he was searched after he was taken to the police car. Another stated he was searched before taken to the car. In both instances, officers testified that he was placed in custody before he was patted down. Both also stated that the items were removed from his pockets and placed on the police car before Allmon was placed in the car.

Recorded Telephone Conversation

The discovery material obtained by the Defendants includes a tape recording and transcript of a telephone conversation between Derek Allmon and Defendant Julian Allmon.  In it, the April 5, 2005 incident was discussed.  Derek Allmon was incarcerated in Tennessee at the time the conversation was recorded.  Each time an inmate at this facility uses the telephone, an operator message is played warning the parties that the call may be monitored and recorded.  Derek Allmon called a middleman, who then added Defendant Julian Allmon as a party to the call only after having made calls to other parties.  (This was done in order to allow Derek Allmon to talk to more than one person while avoiding multiple phone calls.)  Therefore, Julian Allmon was not privy to the operator's message when the original call was placed regarding monitoring and recording.  There is no evidence of Julian Allmon having had prior telephone conversations with Derek Allmon from the facility in Tennessee.

The portion of the transcript that goes to whether Defendant Julian Allmon had any knowledge of the conversation being recorded states as follows:

D. ALLMON: Mmm hmm.  Oh well shit man you don't claim nothing on that and shit.  Don't even claim across this mother fucking phone. (Laughing) Shit.

J. ALLMON: I ain't.

D. ALLMON: You don't.  Don't, I just said you don't cause they're taping this here so shit.  Oh (UI) real.  Mmm hmm.

J. ALLMON: I know you ah.

**STATEMENT OF LAW**

4

The Eighth Circuit Court of Appeals has held that the Fourth Amendment protects a person's right to be secure in their person, house, papers, and effects, against unreasonable searches and seizures. *U.S. Const. Amend. IV.*   It is unreasonable for a house to be searched without a warrant, absent exigent circumstances. *U.S. v. Hill, 430 F.3d 939, 941* (8th Cir. 2005) citing (*Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).  A legitimate concern for the safety of law enforcement officers or other individuals constitutes exigent circumstances that justify warrantless entry. *Id.*, citing (*U.S. v. Vance*, 53 F.3d 220, 222 (8th Cir. 1995); *U.S. v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989)).  The government has the burden of proving that a warrantless search comports with the Fourth Amendment. *U.S. v. Rouse*, 148 F.3d 1040 (8th Cir. 1998).

Fourth Amendment rights are personal, and therefore, a person challenging a search must demonstrate that he has a legitimate expectation of privacy in the area searched.  *U.S. v. Kaylor*, 877 F.2d 658 (8th Cir. 1989).  "... a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable..." *Minnesota v. Cater*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); see also *U.S. v. Sturgis*, 238 F.3d 956.

The Fourth Amendment's general prohibition against warrantless searches does not apply when consent from the person whose property is searched or from a third party with common authority over the property is obtained. *U.S. v. Esparza, 162 F.3d 978, 980* (8th Cir. 1998); *U.S. v. Hines*, 387 F.3d 690, 694 (8th Cir. 2004).

Police may conduct a warrantless search incident to a lawful arrest, even absent probable cause or reasonable articulable suspicion. *U.S. v. Horne*, 4 F.3d 579 (8th Cir. 1993).  Officers

must have a reasonable belief that the area harbors an individual posing a danger to those at the arrest scene. *Id.*, at 586.

It is not unlawful to intercept a telephone communication if a party to the communication has given prior consent to the interception. 18 U.S.C. §2511(2)(c)(2000). This interception is not a violation of the Fourth Amendment. *U.S. v. Coronoa-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003) citing (*U.S. v. White*, 401 U.S. 745, 753, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). The government has the burden of proving consent. *Id.*, citing (*U.S. v. Gomez*, 900 F.2d 43, 44 (5th Cir. 1990). A voluntary participant in an intercepted telephone conversation, knowing that the call is being intercepted, has impliedly consented to the interception. *Id.*, citing *(U.S. v. Horr*, 963, F2d 1124 (8th Cir. 1992).

The Eighth Circuit Court of Appeals has held that a prison inmate has no expectation of privacy in his telephone conversations when he was aware that inmate telephone conversations were monitored and recorded. *U.S. v. Horr*, 963 F.2d 1124 (1992). In U.S. v. Peoples, 250 F.3d 630 (8th Cir. 2001), the Court found that conversations between an inmate and a visitor within a prison, where the inmate and visitor were separated by a glass partition and spoke to one another over an internal telephone device, were not protected as the defendants had no reasonable expectation of privacy.

## DISCUSSION

### April 5, 2005 Arrest

Defendants argue that because the detention, arrest, pat down, and search of the apartment were all conducted without a warrant, the resulting evidence should be suppressed as it was obtained in violation of the Fourth Amendment. The government has the burden of

proving the warrantless search comports with the Fourth Amendment. Because no warrant was issued prior to the arrest and search of the apartment, the government must show exigent circumstances. Based upon the officers' testimony, objects were thrown from the building and the landlord had been complaining of vagrancy and narcotics use. Once on the scene, these factors gave the officers reason to detain and later arrest the defendants.

Here, Allmon was arrested because he had been seen throwing objects from the apartment, which objects were found to be a gun, a sandwich bag, and white rocklike substance. The pat down incident to the arrest was therefore appropriate.

These circumstances, coupled with Allmon's statements claiming he had not been in the apartment, was in fact in the building to visit another apartment, and a witness at the scene stating that Allmon had the key to the apartment give rise to the exigent circumstances needed by the police officers to act without a warrant. The police officers also testified that they had cause to be concerned about their safety because Allmon had thrown a gun from the apartment, and they were not sure if anyone else was in the apartment.

Notwithstanding his possession of the key, Defendant Allmon denied that the apartment was his. In fact, the apartment was leased under a woman's name. Based on these facts, it is difficult to find that Defendant Allmon had an expectation of privacy in the apartment. However, even if the Court found Allmon had that expectation, a warrantless search incident to a lawful arrest, coupled with the officers' reasonable belief that one or more people could be in the apartment, does not violate the Fourth Amendment.

Finally, as Allmon was denying any interest in the apartment, the landlord gave permission to enter the apartment. However, based upon the exigent circumstances, consent in

this instance was not necessary.

### Recorded Telephone Conversation

Defendant Julian Allmon did not give his consent or his implied consent to have the telephone conversation recorded. The transcript of the conversation between he and his uncle does not in itself translate the recorded message given by the operator that the calls are subject to monitoring and recording. There is no evidence that Defendant Allmon knew that his call might be recorded. There is no evidence showing that Defendant Allmon had heard the recorded message in the past. The transcript is not clear as to what Defendant Allmon knew after Derek Allmon warned him. The facts herein are distinguishable from the cases cited above in that Defendant Allmon was not an inmate, and was not a visitor at the jail. He had an expectation of privacy in the telephone conversation with Derek Allmon on April 7, 2005.

### CONCLUSION

Therefore, the Defendants' Motion to Suppress Evidence is DENIED (#66, #69) ; and the Defendant's Second Motion to Suppress Evidence and Supplemental Motion to Suppress is GRANTED (#74, #79).

**IT IS SO ORDERED** this ___3rd___ day of March, 2006.

  
**James M. Moody**
**United States District Judge**